IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

QUALITY LABOR MANAGEMENT, LLC,

        Plaintiff,

vs.

JESSICA GALVAN, an individual, and STEVEN MULLEN, an individual,

        Defendants.

_____

Case No. _____

**PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF REQUESTED**

**DEMAND FOR A JURY TRIAL**

## <u>VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF</u>

Plaintiff Quality Labor Management, LLC ("Quality Labor" or "Plaintiff"), by and through its undersigned counsel, hereby sues Defendants, Jessica Galvan ("Galvan") and Steven Mullen ("Steve Mullen") (collectively, "Defendants"), and seeks temporary and permanent injunctive relief against Defendants.  In support, Plaintiff states as follows:

## <u>NATURE OF THE ACTION</u>

This is an action against Quality Labor's former employees arising out of their active involvement with a direct competitor of Quality Labor in violation of contractual and common law duties owed to Quality Labor, their breaches of several restrictive covenants, their misappropriation of Quality Labor's trade secrets and other confidential and proprietary information, and their tortious interference with

1

Quality Labor's well-established business relationships.    Accordingly, Quality Labor seeks to recover its damages and to enjoin Defendants from (a) competing with Quality Labor within the agreed upon restricted area during the agreed upon prescribed time period; (b) using or disclosing any of Quality Labor's business information, trade secrets or technological expertise that is not readily known or available to the public including client lists, employee lists, data, records, writing, techniques, methods, processes, or any other information, knowledge, or intelligence relating to any aspect of Quality Labor's business; (c) independently or cooperatively soliciting, inducing, or encouraging any current employees, contractors or affiliates of Quality Labor to terminate their employment/affiliation with Quality Labor; (d) contacting, soliciting, or accepting business from any actual or prospective clients of Quality Labor; and (e) otherwise tortiously interfering with Quality Labor's contractual and business relations.

## **PARTIES, JURISDICTION, AND VENUE**

1.      Quality Labor is a Florida limited liability company with its principal place of business located at 4035 W. 1st Street, Sanford, Florida. Each of Quality Labor's members reside in Florida.

2.      Defendants are both individuals residing in Texas.

3.      This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because this dispute is between citizens of different states.  Complete diversity exists

2

between Plaintiff and Defendants.  Further, the amount in controversy in this action exceeds $75,000, exclusive of interest and costs.

4.      This court also has subject matter jurisdiction, pursuant to 28 U.S.C. § 1331 and the Federal Defend Trade Secrets Act ("FDTSA"), 18 U.S.C. § 1836(b)(1).  The FDTSA vests original jurisdiction in federal courts to decide civil cases involving misappropriation of trade secrets where, as here, "the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce."  *See Grow Fin. Fed. Credit Union v. GTE Fed. Credit Union,* No. 8:17-CV-1239-T-30JSS, 2017 WL 3492707, at *3 (M.D. Fla. Aug. 15, 2017).

5.      This court has supplemental jurisdiction over Plaintiff's state law claims in accordance with 28 U.S.C. § 1367 because those claims are so related to Plaintiff's federal law claim that they form part of the same case and controversy.

6.      This court has personal jurisdiction over Defendants because both Defendants submitted to the jurisdiction of the Court by assenting to an agreement providing that all disputes shall be litigated in Orange County, Florida.

7.      Further, the court has personal jurisdiction over Defendants because Defendants caused injury to Quality Labor within the state of Florida while providing services to Quality Labor within the state of Florida.

4843-8372-9379.2

8.      Galvan also availed herself of the forum by traveling to Quality Labor's headquarters in Florida to attend, among other things, staff meetings, training sessions, and company-wide holiday gatherings, between 2013 and 2020.

9.      Similarly, Steve Mullen availed himself of the forum by traveling to Quality Labor's headquarters in Florida to attend, among other things, staff meetings, training sessions, and company-wide holiday gatherings, between 2015 and 2020.

10.     Venue is proper in this court pursuant to Section 19 of the Galvan Agreement and Section 18 of the Steve Mullen Agreement, as defined herein.

## <u>FACTUAL BACKGROUND</u>

**A.      Quality Labor**

11.     Founded in 2008, Quality Labor has developed a high-end, professional skilled service company that partners with clients from across the United States in need of skilled staff.  Quality Labor fulfills the needs of its clients, from various industries, by utilizing innovative software, trained staff and years of business acumen.

12.     Specifically, Quality Labor provides workforce management to its clients in a wide array of industries, including: construction, industrial, energy, stevedoring and telecommunications.

4

13.     Annually, Quality Labor conducts business with hundreds of clients located around the United States.  Quality Labor has a particularly well established business practice in Texas, servicing areas throughout the state via its offices located in Houston, Dallas and Austin since 2013.

14.     To serve its clients, Quality Labor employs thousands of skilled laborers (referred to by Quality Labor as "Team Members"), annually.

15.     In its more than 13 years of operation, Quality Labor invested significant monetary and other resources to develop, among other things, its confidential and proprietary pricing, business know-how, client lists, and Team Member lists.

16.     Specifically, Quality Labor has developed valuable, proprietary databases of information documenting important, non-public information regarding its clients, employees, and Team Members.  Quality Labor stores this information, along with its other confidential business information, on its electronic servers, which can only be accessed with a Quality Labor log-in and password.

17.     Quality Labor provides certain of its employees with individual credentials to access Quality Labor's servers.  Access is limited based upon region—meaning that only employees working in Texas have access to information related to Texas business operations.

4843-8372-9379.2

18.     As stated, Quality Labor maintains a comprehensive client list for each region in which Quality Labor operates.   Quality Labor's client list contains confidential and proprietary information that is not readily available to the public. For example, Quality Labor's client list includes the bill rate and pay rate that each client is willing to pay for a given job.  Further, Quality Labor's client list includes the contact information (name and direct phone number, often including a cell phone number) for the primary decision-maker of each client.  Lastly, Quality Labor's client list includes notes describing Quality Labor's intel on each of its client's businesses and preferences, as acquired through Quality Labor's several years of experience working with a given client.

19.     Quality Labor also maintains a comprehensive list of its Team Members.  This list includes detailed, nonpublic information on each of Quality Labor's Team Members that Quality Labor has acquired over its years of employing said Team Members.   Specifically, the list includes names, contact information (including direct cell phone numbers), job rate, pay rate, job site address, job site supervision, list of skills, E-Verify information and drug test results for each Team Member.  Most importantly, the Team Member list includes notes regarding any given Team Member's history—such as, whether a specific client approved or disapproved of the specific Team Member's work.

6

20.     Quality Labor's Texas-based client list and Team Member list are stored in Microsoft Excel spreadsheets on Quality Labor's electronic server, and they can only by employees with log-in credentials.  Moreover, each region is able to view the confidential information described above that is applicable to that region.

21.     Because Defendants worked in Texas, Defendants had full access to Quality Labor's confidential information relating to Texas.

22.     Quality Labor exercises reasonable measures to ensure the continuing confidentiality of its trade secrets and confidential information.  To that end, Quality Labor utilizes non-disclosure, non-competition, and non-solicitation agreements, which are necessary and reasonable to protect its legitimate business interests.

23.     Each member of Quality Labor's professional staff is required to sign a non-disclosure agreement as a prerequisite to employment with Quality Labor.  In other words, each employee with access to Quality Labor's server signed a non-disclosure agreement.

24.     As a further condition of employment with Quality Labor, each employee, independent contractor and/or Team Member is required to sign an Employee Handbook Acknowledgement and Receipt form, acknowledging that it is the employee/contractor's responsibility to read and comply with the policies contained in the handbook and any revisions thereto.

4843-8372-9379.2

25.     The Employee Handbook directs Quality Labor's workers to maintain the confidentiality of all information relating to Quality Labor's clients and their businesses and not to disclose such information to external parties or even to other employees without a "need to know."

26.     Each year, Quality Labor spends hundreds of thousands of dollars on travel and expenses of officers, sales personnel, and other employees in support of establishing and maintaining goodwill with its clients.  For example, in 2020 alone, Quality Labor spent over $600,000 reimbursing operations, travel and other expenses incurred by Texas representatives in connection with Quality Labor business.

27.     Quality Labor's trade secrets are utilized not only in Texas, but across the United States in furtherance of Quality Labor's business operations.

**B.     Quality Labor's Texas Operations and the Defendants**

28.     In 2013, Quality Labor made the strategic decision to expand its Texas operations.  Before 2013, Quality Labor serviced clients in Texas, but did not have a physical office in Texas.  Quality Labor recognized the need for expansion to better service its already established client relationships.

29.     To that end, Quality Labor appointed an "area representative" to aid in expanding its Texas operation.   In February of 2013, pursuant to an Area Representative Agreement, Quality Labor appointed Scott Mullen ("Scott Mullen"),

8

the brother of Defendant Steve Mullen, as Quality Labor's representative for the state of Texas.  Scott Mullen's duties included, but were not limited to, recruiting members to Quality Labor's staff, soliciting clients, accepting and filling clients' orders, and assigning said staff on Quality Labor's behalf only under the designated service name of Quality Labor and no other name unless otherwise specifically directed in writing by Quality Labor. [1]

30.     Scott Mullen hired Galvan as Quality Labor's operations manager and lead recruiter in Texas.  For several years, Galvan and Scott Mullen collaborated and grew Quality Labor's business in Texas.  Scott Mullen expanded his staff to include his wife, sister, and father.  In 2014, Scott Mullen also hired his brother—Steve Mullen—to manage sales for Quality Labor's Houston office.

31.     As a condition to Galvan's and Steve Mullen's employment with Quality Labor, both Defendants were required to enter into an employment agreement containing certain restrictive covenants designed to protect Quality Labor.  To that end, on June 13, 2013, Quality Labor and Galvan entered into the

---

[1] The 2013 Area Representative Agreement was subsequently updated on December 16, 2015, whereby Quality Labor appointed Scott Mullen and Scott Mullen's wholly-owned limited liability company, SK Mullen Consulting, LLC ("SKM"), as Quality Labor's collective Area Representative throughout Texas.  Hereinafter, Scott Mullen and SKM will collectively be referred to throughout as "Scott Mullen."   True and correct copies of the 2013 Area Representative Agreement and the 2015 update are attached hereto as **Composite Exhibit A.**

9

Covenant Not to Compete, Covenant Not to Solicit, and Non-Disclosure Agreement (the "Galvan Agreement").[2]

32.     Pursuant to the Galvan Agreement, Galvan expressly agreed that while employed with Quality Labor, and for twenty (20) months thereafter, Galvan would neither solicit any of Quality Labor's clients or employees nor compete with Quality Labor.  Ex. B, §§4-5.  Further, Galvan agreed never to disclose any of Quality Labor's confidential business information, trade secrets, or technological expertise (the "Confidential Information") *Id.* at §§3(c), 6.

33.     As a condition to his employment with Quality Labor, Steve Mullen signed a similar agreement.  Specifically, on June 8, 2015, Quality Labor and Steve Mullen entered into the Covenant Not to Compete, Covenant Not to Solicit, and Non-Disclosure Agreement (the "Steve Mullen Agreement").[3]

34.     Pursuant to the Steve Mullen Agreement, Steve Mullen expressly agreed that while employed with Quality Labor, and for twenty-four (24) months thereafter, Steve Mullen would neither solicit any of Quality Labor's clients or employees nor compete with Quality Labor.  Ex. C, §§4-5.  Further, Steve Mullen agreed never to disclose any of Quality Labor's confidential business information,

---

[2] A true and correct copy of the Galvan Agreement is attached hereto as **Exhibit B.**

[3] A true and correct copy of the Steve Mullen Agreement is attached hereto as **Exhibit C.**

4843-8372-9379.2

trade secrets, or technological expertise (the "Confidential Information") *Id.* at §§3(c), 6.

35.     Defendants utilized Quality Labor's resources and assisted Scott Mullen in growing Quality Labor's presence in Texas.  By the end of 2019, Quality Labor earned almost $13 million in revenue from its Texas operations, alone.

### C.     Defendants' Violations of Their Agreements With Quality Labor

36.     Despite Quality Labor's solid performance in Texas in previous years, the company experienced a down year in 2020.  When asked why Quality Labor's performance had dipped so dramatically in Texas during 2020, Scott Mullen cited the COVID-19 pandemic.

37.     However, Quality Labor soon learned that the down-turn was actually a result of a coordinated plot to start a new company to directly compete with Quality Labor carried out by Scott Mullen, Steve Mullen and Galvan.

38.     On February 23, 2021, Quality Labor received a phone call from a Texas client inquiring about the status of two injured employees at a location in Dallas, Texas.  When Quality Labor advised the client that it did not possess any record of having placed employees at their location, the client informed Quality Labor that the employees were placed through "Scott's new company."

39.     Quality Labor immediately began to investigate "Scott's new company" and all those involved.

40.    On February 24, 2021, Quality Labor notified Scott Mullen that he was suspended pending an investigation into his business activities.

41.    Galvan resigned the next day, on February 25, 2021.  That same day, only a day after his suspension, Scott Mullen apparently entered and cleaned out Quality Labor's Texas office after normal working hours without Quality Labor's permission, taking with him his company phone, laptop, and other equipment issued and paid for by Quality Labor.  Upon information and belief, Galvan assisted Scott Mullen in this effort.

42.    Shortly thereafter, on March 1, 2021, Steve Mullen resigned as well.

43.    Although Quality Labor's investigation into the extent of Defendants' wrongdoing is ongoing, Quality Labor has uncovered significant evidence establishing that Defendants wrongfully misappropriated Quality Labor's trade secrets and company information and resources in order to further a competing venture.

44.    Quality Labor's investigation revealed that Defendants, in violation of the express terms of the agreements that each Defendant signed, diverted business to Scale and Change LLC and/or Scale and Change Management LLC (together, "Scale and Change") while still employed, and being compensated, by Quality Labor.

4843-8372-9379.2

45.     While employed by Quality Labor, Galvan accepted applications for skilled workers on behalf of both Scale and Change and Quality Labor.  For example, Quality Labor discovered a draft email dated January 29, 2021, contained in Galvan's deleted email file that attached a prospective employee's application to Scale and Change.  The applicant identified is a current Quality Labor Team Member.

46.     Galvan also staffed current Quality Labor Team Members on projects maintained by Scale and Change, without the Team Members' knowledge.  Specifically, on March 9, 2021, a Quality Labor employee interviewed a prior Quality Labor Team Member, Baldemar Valencia Arteaga ("Arteaga").[4]  Arteaga stated that in November of 2020, Galvan placed Arteaga at a job site maintained by Scale and Change, while representing to Arteaga that Quality Labor was now Scale and Change.  Hager Decl., ¶8(a)-(i).

47.     Steve Mullen similarly diverted prospective and actual Team Members from Quality Labor to Scale and Change.  On that point, Quality Labor uncovered emails dated September 9, 2020, sent from Steve Mullen's Quality Labor address inviting the recipient to fill out Scale and Change employment applications.  In the emails, Steve Mullen edited his signature block to state that he was the "Chief of

---

[4] *See* Declaration of Ross Hager ("Hager Decl."), filed contemporaneously herewith, in support of Plaintiff's Motion for Temporary Injunction.

Operations" for "Construction Staffing & Services LLC."  Further, Steve Mullen's email signature also boldly included the following image:

**SCALE & CHANGE ≪**

48.    Steve Mullen also attempted to persuade Quality Labor's clients to stop doing business with Quality Labor and instead move their business to Scale and Change.  In February of 2021, one of Quality Labor's largest Texas clients advised that it received a telephone call from Steve Mullen, who attempted to convince the client to move its business from Quality Labor to "his brother's company."  Hager Decl., ¶7.

**D.    Scale and Change**

49.    Scale and Change is operated by Michael Chase Myrick ("Myrick"). Upon information and belief, Myrick and Scott Mullen are close friends, vacation together, and lived next door to one another for four years.

50.    According to filings with the Texas Secretary of State, on October 21, 2019 and January 14, 2021, Myrick incorporated Scale and Change LLC and Scale and Change Management LLC, respectively.[5]

---

[5] A true and correct copy of Scale and Change LLC's Certificate of Formation and Scale and Change Management LLC's Certificate of Formation are attached hereto as **Composite Exhibit D.**

4843-8372-9379.2

51.     According to his LinkedIn profile, Myrick works as a Strategic Sourcing Manager for Ericsson, the cellphone manufacturer, and upon information and belief has limited, if any, experience in the staffing industry.[6]

52.     According      to      Scale      and      Change's      website (https://scaleandchange.com/), the company provides construction staffing and services, such as electricians, plumbers, pipe-fitters, carpenters, and welders—the exact services that Quality Labor provides—throughout the state of Texas.  Scale and Change touts itself as possessing over 30 years of combined experience in staffing.[7]

### E.     Scott Mullen

53.     Upon information and belief, the wrongful conduct detailed above was performed at the direction and behest of Scott Mullen, who led the charge in misappropriating Quality Labor's resources for the benefit for Scale and Change.

54.     Quality Labor uncovered emails sent from Quality Labor's long-time client to Scott Mullen on his Quality Labor email address.  The client told Scott Mullen that it was in need of two Team Members for a project.  Scott Mullen responded stating he would "take care of it."  However, Quality Labor's records are

---

[6] A true and correct copy of Myrick's LinkedIn profile, as it appeared on March 17, 2021, is attached hereto as **Exhibit E.**

[7] A true and correct copy of Scale and Change's website, as it appeared on March 8, 2021, is attached hereto as **Exhibit F.**

devoid of any indication that Quality Labor's Team Members were actually placed with the client in response to this request. Upon information and belief, Scott Mullen staffed this request with two employees of Scale and Change.

55. From March 2, 2021 through March 4, 2021, Quality Labor's President and Chief Executive Officer, Mark Lang ("Lang"), met with Quality Labor's largest Texas clients. Three clients confirmed Scott Mullen's relationship with Scale and Change and stated that, upon the advice of Scott Mullen, they had transferred their business from Quality Labor to Scale and Change. The first client stated that in October of 2020, Scott Mullen represented himself as the owner of Scale and Change in order to obtain the client's business for the new company. The first client further advised, in the presence of two other Quality Labor employees, that the client knew of two email addresses for Scott Mullen—one associated with Quality Labor and one associated with Scale and Change—and that the client had accidentally addressed the aforementioned email requesting two Team Members to Scott Mullen's Quality Labor address. The second client advised that Scott Mullen represented to it in January of 2021 that he had left Quality Labor to start a new company, Scale and Change. The last client told Lang that as early as September of 2020, Scott Mullen and a former employee of Quality Labor, who Scott Mullen supervised, represented that Quality Labor was now Scale and Change.

4843-8372-9379.2

56.     Together, Scott Mullen, Steve Mullen and Galvan utilized Quality Labor's Confidential Information on behalf of Scale and Change.

57.     The activities outlined herein constitute direct and unfair competition with Quality Labor and use of Quality Labor's trade secrets, goodwill and Confidential Information in direct violation of the agreements executed while under Quality Labor's employ.

58.     All conditions precedent to the filing and maintenance of this action have been performed, waived or excused.

59.     Plaintiff has retained the law firm of Foley & Lardner, LLP in this matter and is obligated to pay a reasonable fee for its services.

## Count I – Breach of Covenant Not to Compete
(Galvan)

60.     Plaintiff realleges and incorporates by reference the allegations in Paragraphs 1 through 59 above.

61.     On or about June 13, 2013, Galvan entered into the Galvan Agreement with Quality Labor.

62.      Pursuant to Section 4 of the Galvan Agreement, Galvan agreed that, during the period of her association with Quality Labor in any capacity, and for a period of twenty (20) months after Galvan's termination, Galvan would not become associated in any way with any business or endeavor within the "Territory."  The Galvan Agreement defines the Territory to include "any county in which [Quality

17

Labor] […] provides or markets its services or products, establishes business relationships or in which a Customer is located or does business." Galvan Agreement, § 3(d).

63.   The non-competition provision is necessary to protect and maintain Quality Labor's legitimate business interests, including but not limited to: (i) its trade secrets, (ii) its valuable and confidential business information, (iii) its substantial relationships with specific prospective or existing clients, and (iv) its goodwill associated with the Quality Labor name throughout the state of Texas.

64.   The twenty-month restriction in the non-competition provision prohibiting Galvan from performing any work competitive with Plaintiff is reasonable to protect Plaintiff's legitimate business interests.   Further, the geographic scope in the non-competition provision is reasonable in that it encompasses only the geographic territory in which Quality Labor operated.

65.   Galvan breached the non-competition provision by working for or otherwise providing services to Scale and Change within the Territory—a direct competitor of Quality Labor.

66.   Galvan's breaches of the non-competition provision have caused and continue to cause Plaintiff irreparable harm in the form of, among other things, loss of customers and goodwill.

67.     Accordingly, Plaintiff lacks an adequate remedy at law, and the interest of the public will be well-served by the entry of an injunction.

68.     Further, as a result of Galvan's acts and omissions, Plaintiff is entitled to recover its damages, to the extent they can be ascertained.

69.     Pursuant to Section 542.335(1)(k), Fla. Stat., and Section 18 of the Galvan Agreement, Plaintiff is entitled to recover the fees it incurs in prosecuting this action.

70.     Pursuant to Section 542.335(1)(j), Fla. Stat., Plaintiff is entitled to an immediate injunction restraining Galvan's breaches of the non-competition provision.

WHEREFORE, Plaintiff seeks a judgment against Galvan for all ascertainable damages and interest, and respectfully requests entry of a temporary and permanent injunction enjoining Galvan from violating the non-competition provision, awarding Plaintiff its attorneys' fees and costs incurred in prosecuting this action pursuant to Section 542.335(1)(k), Fla. Stat., and Section 18 of the Galvan Agreement, and requests such further relief as this Court deems just and proper.

## Count II – Breach of Covenant Not to Solicit
(Galvan)

71.     Plaintiff realleges and incorporates the allegations contained in Paragraphs 1 through 59 above.

4843-8372-9379.2

72.     On or about June 13, 2013, Galvan entered into the Galvan Agreement with Quality Labor.

73.     Pursuant to Section 5(a) of the Galvan Agreement, Galvan agreed that while employed and for twenty (20) months thereafter, Galvan would not solicit and of Quality Labor's clients.

74.     Further, Pursuant to Section 5(b) of the Galvan Agreement, Galvan agreed that while employed and for twenty (20) months thereafter, Galvan would not "accept employment with, hire, or enter into business with, any person who then is, or at any time within less than one full year preceding said employment, hiring or entry into business has been, in the Company's employ, nor directly or indirectly solicit any of the Company's employees to work for any company or business that is competitive with Company, whether or not the Employee has any part in or association with that competitive company or business."

75.     The non-solicitation provisions are necessary to protect and maintain Plaintiff's legitimate business interests, including but not limited to: (i) its trade secrets, (ii) its valuable and confidential business information, (iii) its substantial relationships with specific prospective or existing clients, and (iv) its goodwill associated with the Quality Labor name throughout the state of Texas.

76.     The twenty-month restriction on the solicitation of Quality Labor's Team Members is reasonable to protect Plaintiff's legitimate business interests.

4843-8372-9379.2

77.     Galvan breached the non-solicitation provisions by, at a minimum, hiring and/or staffing Quality Labor's Team Members on behalf of Scale and Change while the Team Member was either still employed with Quality Labor or had been in Quality Labor's employ at some point in the preceding year.

78.     Galvan's breaches of the Galvan Agreement have caused and will cause Plaintiff irreparable harm in the form of, among other things, loss of customers and goodwill.

79.     Plaintiff lacks an adequate remedy at law, and the interest of the public will be well-served by the entry of an injunction.

80.     Pursuant to Section 542.335(1)(k), Fla. Stat., and Section 18 of the Galvan Agreement, Plaintiff is entitled to recover the fees it incurs in prosecuting this action.

81.     Pursuant to Section 542.335(1)(j), Fla. Stat., Plaintiff is entitled to an immediate injunction restraining Galvan's actual and threatened breach of the non-solicitation provisions.

82.     Further, as a result of Galvan's acts and omissions, Plaintiff is entitled to recover its damages, to the extent they can be ascertained.

WHEREFORE, Plaintiff seeks a judgment against Galvan for all ascertainable damages and interest, and respectfully requests entry of a temporary and permanent injunction enjoining Galvan from violating the non-solicitation provisions, awarding

Plaintiff its attorneys' fees and costs incurred in prosecuting this action pursuant to Section 542.335(1)(k), Fla. Stat., and Section 18 of the Galvan Agreement, and requests such further relief as this Court deems just and proper.

### Count III – Breach of Covenant Not to Disclose or Use Confidential Information
(Galvan)

83.    Plaintiff realleges and incorporates the allegations contained in Paragraphs 1 through 59 above.

84.    On or about June 13, 2013, Galvan entered into the Galvan Agreement with Quality Labor.

85.    Pursuant to Section 6 of the Galvan Agreement, Galvan agreed not to disclose any Confidential Information, as defined in the Galvan Agreement to include, among other things, customer lists, vendor lists, all business records and personnel data related to the employees of the Company.

86.    Galvan breached Section 6 of the Galvan Agreement by utilizing Quality Labor's Confidential Information to aid in Scale and Change's business and to contact and solicit Quality Labor's actual or potential Team Members, on behalf of Scale and Change.

87.    Galvan's actions during the term of the Galvan Agreement constitute an actual, and a threatened, breach of the confidentiality provision as she is in a

position to, and already has, used and disclosed Plaintiff's trade secrets and Confidential Information to the detriment of Quality Labor.

88.     Galvan's breach, and threatened breach, of the confidentiality provision have caused and will cause Plaintiff irreparable harm in the form of, among other things, loss of customers and goodwill.

89.     Plaintiff lacks an adequate remedy at law, and the interest of the public will be well-served by the entry of an injunction.

90.     Pursuant to Section 542.335(1)(k), Fla. Stat., and Section 18 of the Galvan Agreement, Plaintiff is entitled to recover the fees it incurs in prosecuting this action.

91.     Pursuant to Section 542.335(1)(j), Fla. Stat., Plaintiff is entitled to an immediate injunction restraining Galvan's actual and threatened breach of the confidentiality provisions.

92.     Further, as a result of Galvan's acts and omissions, Plaintiff is entitled to recover its damages, to the extent they can be ascertained.

WHEREFORE, Plaintiff seeks a judgment against Galvan for all ascertainable damages and interest, and respectfully requests entry of a temporary and permanent injunction enjoining Galvan from violating the confidentiality provision, awarding Plaintiff its attorneys' fees and costs incurred in prosecuting this action pursuant to

4843-8372-9379.2

Section 542.335(1)(k), Fla. Stat., and Section 18 of the Galvan Agreement, and requests such further relief as this Court deems just and proper.

## Count IV – Breach of Covenant Not to Compete
(Steve Mullen)

93.    Plaintiff realleges and incorporates by reference the allegations in Paragraphs 1 through 59 above.

94.    On or about June 8, 2015, Steve Mullen entered into the Steve Mullen Agreement with Quality Labor.

95.    Pursuant to Section 4 of the Steve Mullen Agreement, Steve Mullen agreed that, during the period of his association with Quality Labor in any capacity, and for a period of twenty-four (24) months after termination, Steve Mullen would not become associated in any way with any business or endeavor within the "Territory."  The Steve Mullen Agreement defines the Territory to include "any county in which [Quality Labor] currently does Business, or […] provides or markets its services or products, establishes business relationships or in which a Customer is located or does business." Steve Mullen Agreement, § 3(d).

96.    The non-competition provision is necessary to protect and maintain Quality Labor's legitimate business interests, including but not limited to: (i) its trade secrets, (ii) its valuable and confidential business information, (iii) its substantial relationships with specific prospective or existing clients, and (iv) its goodwill associated with the Quality Labor name throughout the state of Texas.

24

97.    The twenty-four month restriction in the non-competition provision prohibiting Steve Mullen from performing any work competitive with Plaintiff is reasonable to protect Plaintiff's legitimate business interests.    Further, the geographic scope in the non-competition provision is reasonable in that it encompasses only the geographic territory in which Quality Labor operated.

98.    Steve Mullen breached the non-competition provision by working for or otherwise providing services to Scale and Change with the Territory—a direct competitor of Quality Labor.

99.    Steve Mullen's breaches of the non-competition provision have caused and continue to cause Plaintiff irreparable harm in the form of, among other things, loss of customers and goodwill.

100.    Accordingly, Plaintiff lacks an adequate remedy at law, and the interest of the public will be well-served by the entry of an injunction.

101.    Further, as a result of Steve Mullen's acts and omissions, Plaintiff is entitled to recover its damages, to the extent they can be ascertained.

102.    Pursuant to Section 542.335(1)(k), Fla. Stat., and Section 17 of the Steve Mullen Agreement, Plaintiff is entitled to recover the fees it incurs in prosecuting this action.

103.   Pursuant to Section 542.335(1)(j), Fla. Stat., Plaintiff is entitled to an immediate injunction restraining Steve Mullen's breaches of the non-competition provision.

WHEREFORE, Plaintiff seeks a judgment against Steve Mullen for all ascertainable damages and interest, and respectfully requests entry of a temporary and permanent injunction enjoining Steve Mullen from violating the non-competition provision, awarding Plaintiff its attorneys' fees and costs incurred in prosecuting this action pursuant to Section 542.335(1)(k), Fla. Stat., and Section 17 of the Steve Mullen Agreement, and requests such further relief as this Court deems just and proper.

## Count V – Breach of Covenant Not to Solicit
(Steve Mullen)

104.   Plaintiff realleges and incorporates the allegations contained in Paragraphs 1 through 59 above.

105.   On or about June 8, 2015, Steve Mullen entered into the Steve Mullen Agreement with Quality Labor.

106.   Pursuant to Section 5(a) of the Steve Mullen Agreement, Steve Mullen agreed that while employed and for twenty-four (24) months thereafter, Steve Mullen would not solicit and of Quality Labor's clients.

107.   Pursuant to Section 5(a) of the Steve Mullen Agreement, Steve Mullen agreed that while employed and for twenty-four (24) months thereafter, Steve

4843-8372-9379.2

Mullen would not "call upon any Customer or Customers of [Quality Labor], for the purpose of soliciting, selling, renting or other business promotion […] nor will he in any way, directly or indirectly, for himself or on behalf of, or in conjunction with any other person, persons, firm, partnership, corporation or company, solicit, divert, or take away any such Customers of [Quality Labor]."[8]

108.   Similarly, pursuant to Section 5(b) of the Steve Mullen Agreement, Steve Mullen agreed that while employed and for twenty-four (24) months thereafter, Steve Mullen would not "accept employment with, hire, or enter into business with, any person who then is, or at any time within less than one full year preceding said employment, hiring or entry into business has been, in [Quality Labor's] employ, nor directly or indirectly solicit any of [Quality Labor's] employees to work for any company or business that is competitive with [Quality Labor], whether or not the Employee has any part in or association with that competitive company or business."

109.   The non-solicitation provisions are necessary to protect and maintain Plaintiff's legitimate business interests, including but not limited to: (i) its trade secrets, (ii) its valuable and confidential business information, (iii) its substantial

---

[8] The Steve Mullen Agreement defines Customer to include "a natural person or business entity with which [Quality Labor] has established an advantageous business relationship, either through oral or written contract or other recognized commitment to obtain or receive the products or services of Company regarding specific project(s) in which customer desires [Quality Labor] to participate." Ex. C, §3(b).

relationships with specific prospective or existing clients, and (iv) its goodwill associated with the Quality Labor name throughout the state of Texas.

110.   The twenty-four month restriction on the solicitation of Quality Labor's Team Members and clients is reasonable to protect Plaintiff's legitimate business interests.

111.   Steve Mullen breached the non-solicitation provisions by inviting current or prospective Quality Labor Team Members to complete Scale and Change applications and by calling upon at least one Quality Labor client in an attempt to solicit the client to move its business to Scale and Change.

112.   Steve Mullen's breaches of the Steve Mullen Agreement have caused and will cause Plaintiff irreparable harm in the form of, among other things, loss of customers and goodwill.

113.   Plaintiff lacks an adequate remedy at law, and the interest of the public will be well-served by the entry of an injunction.

114.   Pursuant to Section 542.335(1)(k), Fla. Stat., and Section 17 of the Steve Mullen Agreement, Plaintiff is entitled to recover the fees it incurs in prosecuting this action.

115.   Pursuant to Section 542.335(1)(j), Fla. Stat., Plaintiff is entitled to an immediate injunction restraining Steve Mullen's actual and threatened breach of the non-solicitation provisions.

28

116.   Further, as a result of Steve Mullen's acts and omissions, Plaintiff is entitled to recover its damages, to the extent they can be ascertained.

WHISEFORE, Plaintiff seeks a judgment against Steve Mullen for all ascertainable damages and interest, and respectfully requests entry of a temporary and permanent injunction enjoining Steve Mullen from violating the non-solicitation provisions, awarding Plaintiff its attorneys' fees and costs incurred in prosecuting this action pursuant to Section 542.335(1)(k), Fla. Stat., and Section 17 of the Steve Mullen Agreement, and requests such further relief as this Court deems just and proper.

### Count VI – Breach of Covenant Not to Disclose or Use Confidential Information
(Steve Mullen)

117.   Plaintiff realleges and incorporates the allegations contained in Paragraphs 1 through 59 above.

118.   On or about June 8, 2015, Steve Mullen entered into the Steve Mullen Agreement with Quality Labor.

119.   Pursuant to Section 6 of the Steve Mullen Agreement, Steve Mullen agreed not to disclose any Confidential Information, as defined in the Steve Mullen Agreement to include, among other things, customer lists, vendor lists, all business records and personnel data related to the employees of the Company.

4843-8372-9379.2

120.    Steve Mullen breached Section 6 of the Steve Mullen Agreement by utilizing Quality Labor's Confidential Information to divert Quality Labor's clients and Quality Labor's actual and potential Team Members from Quality Labor to Scale and Change.

121.    Steve Mullen's actions during the term of the Steve Mullen Agreement constitute an actual, and a threatened, breach of the confidentiality provision as he is in a position to, and already has, used and disclosed Plaintiff's trade secrets and Confidential Information to the detriment of Quality Labor.

122.    Steve Mullen's breach, and threatened breach, of the confidentiality provision have caused and will cause Plaintiff irreparable harm in the form of, among other things, loss of customers and goodwill.

123.    Plaintiff lacks an adequate remedy at law, and the interest of the public will be well-served by the entry of an injunction.

124.    Pursuant to Section 542.335(1)(k), Fla. Stat., and Section 17 of the Steve Mullen Agreement, Plaintiff is entitled to recover the fees it incurs in prosecuting this action.

125.    Pursuant to Section 542.335(1)(j), Fla. Stat., Plaintiff is entitled to an immediate injunction restraining Steve Mullen's actual and threatened breach of the confidentiality provisions.

4843-8372-9379.2

126.   Further, as a result of Steve Mullen's acts and omissions, Plaintiff is entitled to recover its damages, to the extent they can be ascertained.

WHISEFORE, Plaintiff seeks a judgment against Steve Mullen for all ascertainable damages and interest, and respectfully requests entry of a temporary and permanent injunction enjoining Steve Mullen from violating the confidentiality provision, awarding Plaintiff its attorneys' fees and costs incurred in prosecuting this action pursuant to Section 542.335(1)(k), Fla. Stat., and Section 17 of the Steve Mullen Agreement, and requests such further relief as this Court deems just and proper.

## Count VII – Tortious Interference with Business Relationships
(All Defendants)

127.   Plaintiff realleges and incorporates the allegations contained in Paragraphs 1 through 59 above.

128.   A business relationship exists between Plaintiff and its clients, employees and Team Members.

129.   Defendants have knowledge of the business relationships between Plaintiff and its clients, employees and Team Members.

130.   Defendants intentionally and unjustifiably interfered with Plaintiff's business relationships with its Team Members by using Plaintiff's Confidential Information to contact and solicit Plaintiff's Team Members and directing them toward employment with Scale and Change.

31

131.   Further, Steve Mullen intentionally and unjustifiably interfered with Plaintiff's business relationships with its clients by using Plaintiff's Confidential Information to contact and solicit Plaintiff's clients on behalf of Scale and Change.

132.   Defendants lack any justification or privilege for interfering with Plaintiff's business relationships.

133.   Plaintiff has suffered, and will continue to, suffer damages as a direct and proximate result of Defendants' interference with its business relationships.

134.   As a result of Defendants' acts and omissions, Plaintiff is entitled to recover its damages to the extent ascertainable.

135.   Further, Defendants' actual tortious interference and threatened tortious interference has caused and will cause Plaintiff irreparable harm in the form of, among other things, loss of customers and goodwill.

136.   Plaintiff lacks an adequate remedy at law, and the interest of the public will be well-served by the entry of an injunction.

WHEREFORE, Plaintiff seeks entry of a judgment against Defendants for intentional interference with its business relationships awarding all ascertainable damages and interest, and respectfully requests entry of preliminary and permanent injunctive relief enjoining Defendants from tortiously interfering with Plaintiff's contractual and business relations, and requests such further relief as this Court deems just and proper.

## <u>Count VIII – Violation of the Defend Trade Secrets Act</u>
(All Defendants)

137.   Plaintiff realleges and incorporates the allegations contained in Paragraphs 1 through 59 above.

138.   This is a claim by Plaintiff against Defendants for violations of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1831, *et seq*. and, in particular for violation of 18 U.S.C. § 1836(b).

139.   The Confidential Information stored in Plaintiff's servers and accessed by Defendants, including Quality Labor's client list and Team Member list, constitute trade secrets in that they: (a) derive independent economic value from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (b) have been the subject of reasonable efforts to maintain their secrecy.

140.   Defendants were fully aware of the confidential and trade secret nature of the Confidential Information contained in the Quality Labor's databases, including Quality Labor's client list and Team Member list, pricing, and other proprietary information.

141.   Pursuant to the Galvan Agreement, the Steve Mullen Agreement, and common law, Defendants had a duty to maintain the secrecy of Quality Labor's trade secrets.

4843-8372-9379.2

142.   Defendants subsequently used Quality Labor's trade secrets for their own benefit and the benefit of a third party. Upon information and belief, Defendants did so to further Scale and Change's business in Texas and in other states across the United States.

143.   Defendants' improper access and subsequent use of Plaintiff's trade secret information was deliberate and intentional.

144.   Defendants' deliberate and intentional actions in: (a) improperly accessing Plaintiff's trade secret information, and/or (b) using Plaintiff's trade secret information constitute trade secret misappropriation.

145.   Defendants' actions are the direct and proximate cause of damages to Plaintiff.

146.   As a direct and proximate cause of Defendants' trade secret misappropriation, Defendants have been unjustly enriched in an amount no less than the amount of business lost by Plaintiff.

147.   Defendants have engaged in willful and malicious misappropriation and by reason thereof, Plaintiff is entitled to twice the amount of its actual damages and/or the amounts by which Defendants have been unjustly enriched as exemplary damages pursuant to 18 U.S.C. § 1836(b)(3)(C).

4843-8372-9379.2

148.   Further, Defendants' trade secret misappropriation have caused and will cause Plaintiff irreparable harm in the form of, among other things, loss of customers and goodwill.

149.   Plaintiff lacks an adequate remedy at law, and the interest of the public will be well-served by the entry of an injunction.

150.   Defendants have irreparably injured Plaintiff, and such injury will continue unless enjoined by this Court.

151.   As a result of Defendants' acts and omissions, Plaintiff is entitled to recover damages to the extent they can be ascertained.

152.   Because Defendants willfully and maliciously misappropriated its trade secrets, Plaintiff is also entitled to its attorney's fees, pursuant to 18 U.S.C. 1826(b)(3)(D).

153.   Plaintiff seeks temporary and permanent injunctive relief, pursuant to 18 U.S.C. § 1836(b)(3)(A), to prevent further misappropriation of its Confidential Information.

WHEREFORE, Plaintiff seeks a judgment against Defendants awarding all ascertainable damages and interest, exemplary damages, along with attorneys' fees and costs incurred in prosecuting this action.  Plaintiff also respectfully requests entry of a temporary and permanent injunction enjoining Defendants from using any of Plaintiff's misappropriated trade secrets, compelling the return of any retained

Quality Labor documentation that would constitute a trade secret, and requests such further relief as this Court deems just and proper.

## Count IX – Violation of the Florida Uniform Trade Secret Act
(All Defendants)

154.    Plaintiff realleges and incorporates the allegations contained in Paragraphs 1 through 59 above.

155.    This is a claim by Plaintiff against Defendants for violation of Florida's Uniform Trade Secrets Act Fl. Stat. § 688, *et seq*. and, in particular for violation of § 688.002.

156.    The Confidential Information stored in Plaintiff's servers and accessed by Galvan, including Quality Labor's client list and Team Member list,  constitute trade secrets in that they: (a) derive independent economic value from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (b) have been the subject of reasonable efforts to maintain their secrecy.

157.    Defendants were fully aware of the confidential and trade secret nature of the Confidential Information contained in the Quality Labor's databases, including Quality Labor's client list and Team Member list, pricing, and other proprietary information.

158.   Pursuant to the Galvan Agreement, the Steve Mullen Agreement, and common law, Defendants had a duty to maintain the secrecy of Quality Labor's trade secrets.

159.   Defendants' deliberate and intentional actions in: (a) improperly accessing Plaintiff's trade secret information, and/or (b) using Plaintiff's trade secret information constitute trade secret misappropriation.

160.   Defendants' actions are the direct and proximate cause of damages to Plaintiff.

161.   As a direct and proximate cause of Defendants' trade secret misappropriation, Defendants have been unjustly enriched in an amount no less than the amount of business lost by Plaintiff.

162.   Further, Defendants' trade secret misappropriation has caused and will cause Plaintiff irreparable harm in the form of, among other things, loss of customers and goodwill.

163.   Plaintiff lacks an adequate remedy at law, and the interest of the public will be well-served by the entry of an injunction.

164.   As a result of Defendants' acts and omissions, Plaintiff is entitled to recover its ascertainable damages.

165.   Plaintiff seeks temporary and permanent injunctive relief, pursuant to section 688.003, Fla. Stat.

166.   Because Defendants willfully and maliciously misappropriated its trade secrets, Plaintiff is also entitled to exemplary damages, pursuant to section 688.004, Fla. Stat.

167.   Because Defendants willfully and maliciously misappropriated its trade secrets, Plaintiff is also entitled to its attorney's fees, pursuant to section 688.005, Fla. Stat.

WHEREFORE, Plaintiff seeks a judgment against Defendants awarding all ascertainable damages and interest, exemplary damages, along with attorneys' fees and costs incurred in prosecuting this action.  Plaintiff also respectfully requests entry of a temporary and permanent injunction enjoining Defendants from using any of Plaintiff's misappropriated trade secrets, compelling the return of any retained Quality Labor documentation that would constitute a trade secret, and requests such further relief as this Court deems just and proper.

## Count X – Breach of Fiduciary Duties
### (All Defendants)

168.   Plaintiff realleges and incorporates the allegations contained in Paragraphs 1 through 59 above.

169.   Pursuant to the Galvan Agreement, Galvan served Quality Labor as its employee.

170.   Pursuant to the Steve Mullen Agreement, Steve Mullen served Quality Labor as its employee.

171.   As employees of Quality Labor, Defendants owed Quality Labor a duty of loyalty, good faith, fair dealing and trust.

172.   By virtue of these duties, Defendants were prohibited from acting in a disloyal manner, including by taking Quality Labor's confidential and proprietary information acquired during their employment, competing with Quality Labor, and interfering with Quality Labor's relationships with its clients and team members.

173.   Defendants breached these duties by, among other things, competing with Quality Labor, misappropriating Quality Labor's trade secrets and Confidential Information, conducting work on behalf of Scale and Change while working for Quality Labor, and diverting clients and employees away from Quality Labor—all while continuing to accept compensation from Quality Labor.

174.   As a result of these breaches, Plaintiff has suffered irreparable harm and damage.

175.   As a result of Defendants' acts and omissions, Plaintiff is entitled to recover its damages to the extent ascertainable.

176.   Further, Defendants' actual and threatened breaches have caused and will cause Plaintiff irreparable harm in the form of, among other things, loss of customers and goodwill.

177.   Plaintiff lacks an adequate remedy at law, and the interest of the public will be well-served by the entry of an injunction.

4843-8372-9379.2

WHEREFORE, Plaintiff seeks entry of a judgment against Defendants for breach of fiduciary duties, awarding all ascertainable damages and interest, and respectfully requests entry of preliminary and permanent injunctive relief enjoining Defendants from further breaches, and requests such further relief as this Court deems just and proper.

## Count XI– Conversion
(All Defendants)

178.   Plaintiff realleges and incorporates the allegations contained in Paragraphs 1 through 59 above.

179.   While still in the employ of Quality Labor, Galvan misappropriated, at a minimum Quality Labor's Team Member lists.  Upon information and belief, Galvan also misappropriated Quality Labor's client lists.

180.   While still in the employ of Quality Labor, Steve Mullen misappropriated Quality Labor's Team Member lists and client lists.

181.   Defendants wrongfully asserted dominion over Quality Labor's property—namely, its client lists and Team Member lists.

182.   Defendants' actions were inconsistent with Quality Labor's ownership of its client lists and Team Member lists.

183.   As a result of Defendants' conduct, Plaintiff has been damaged.

4843-8372-9379.2

WHEREFORE, Plaintiff seeks entry of a judgment against Defendants for conversion, awarding all damages and interest, together with such other and further relief as this Court deems appropriate.

### Count XII– Unjust Enrichment
(Galvan)

184.   Plaintiff realleges and incorporates the allegations contained in Paragraphs 1 through 59 above.

185.   This count is pled in the alternative to Counts I-III.

186.   Quality Labor conferred a benefit on Galvan in the form of salary.

187.   Galvan voluntarily accepted payment and retained this benefit while failing to perform her duties for Quality Labor.

188.   Galvan has been unjustly enriched to the extent she was compensated for services by Quality Labor that were not performed for the benefit of Quality Labor.

189.   Based on Quality Labor's investigation, to date, Galvan has retained at least $28,347.68 in payment for salary and commissions from September 7, 2020 onward, that was incurred for the benefit of herself, Scale and Change and/or Myrick—not Quality Labor.

190.   Equity requires that Galvan remit this amount to Quality Labor.

4843-8372-9379.2

WHEREFORE, Plaintiff seeks a judgment in its favor and against Galvan for unjust enrichment, awarding damages, costs, and interest, together with any such other and further relief deemed appropriate by the Court.

### Count XIII– Unjust Enrichment
(Steve Mullen)

191.   Plaintiff realleges and incorporates the allegations contained in Paragraphs 1 through 59 above.

192.   This count is pled in the alternative to Counts IV-VI.

193.   Quality Labor conferred a benefit on Steve Mullen in the form of salary.

194.   Steve Mullen voluntarily accepted payment and retained this benefit while failing to perform his duties for Quality Labor.

195.   Steve Mullen has been unjustly enriched to the extent he was compensated for services by Quality Labor that were not performed for the benefit of Quality Labor.

196.   Based on Quality Labor's investigation, to date, Steve Mullen has retained at least $28,482.32 in payment for salary and commissions from September 7, 2020 onward, that was incurred for the benefit of himself, Scale and Change and/or Myrick—not Quality Labor.

197.   Equity requires that Steve Mullen remit this amount to Quality Labor.

4843-8372-9379.2

WHEREFORE, Plaintiff seeks a judgment in its favor and against Steve Mullen for unjust enrichment, awarding damages, costs, and interest, together with any such other and further relief deemed appropriate by the Court.

## Count XIV – Civil Conspiracy
(All Defendants)

198.   Plaintiff realleges and incorporates all preceding allegations set forth above.

199.   Defendants conspired with one another and with Scott Mullen to commit the unlawful acts described in Counts I-XIII, above.

200.   Galvan engaged in several overt acts in pursuance of the conspiracy— including without limitation, fielding applications for Scale and Change while employed by Quality Labor, utilizing Quality Labor's confidential and proprietary information in furtherance of Scale and Change's business, and staffing Scale and Change's projects with Quality Labor's Team Members.

201.   Steve Mullen engaged in several overt acts in pursuance of the conspiracy—including without limitation, fielding applications for Scale and Change while employed by Quality Labor, utilizing Quality Labor's confidential and proprietary information in furtherance of Scale and Change's business, and soliciting Quality Labor's clients on behalf of Scale and Change.

202.   As a result of acts performed in pursuit of the conspiracy, Plaintiff has been damaged.

4843-8372-9379.2

WHEREFORE, Plaintiff seeks entry of a judgment against Defendants for civil conspiracy, awarding all damages and interest, together with such other and further relief as this Court deems appropriate.

## JURY TRIAL DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury for all issues triable by jury.

Dated: April 1, 2021

/s/  Michael Gay

**Michael Gay**
Florida Bar No:  938191
Primary Email:  mgay@foley.com
Secondary Email: sscott@foley.com
**Emily J. Lang**
Florida Bar No:  1011367
Primary Email:  elang@foley.com
Secondary Email:  kwarren@foley.com
**FOLEY & LARDNER LLP**
111 N. Orange Avenue, Suite 1800
Orlando, Florida 32801-2386
Telephone: 407-423-7656
Facsimile: 407-648-1743

*Counsel for Quality Labor Management, LLC*

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

QUALITY LABOR MANAGEMENT,
LLC,

                Plaintiff,

vs.

JESSICA GALVAN, an individual, and
STEVEN MULLEN, an individual

                Defendants.

_____

Case No. _____

**PRELIMINARY AND
PERMANENT INJUNCTIVE
RELIEF REQUESTED**

**DEMAND FOR A JURY
TRIAL**

## <u>VERIFICATION</u>

Pursuant to 28 U.S.C. § 1746 and under penalties of perjury, the undersigned states that I have read the foregoing Verified Complaint filed in this action. The factual allegations contained therein are true and correct, except as to matters stated on information and belief, and as to such matters I state that I verily believe the same to be true to the best of my knowledge, information and belief.

QUALITY LABOR MANAGEMENT, LLC

By:_____

Mark Lang, Sr., President and Chief Executive Officer of the Plaintiff, Quality Labor Management, LLC (as to all paragraphs)

Executed on: March <u>31</u>, 2021

4819-0853-0146.1